UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PHILLIP PARKER,

        Plaintiff,

   v.

ETHOSENERGY POWER PLANT
SERVICES, LLC., et al.,

        Defendant.

Civ. No. : 16-00238-WBS-AC

<u>MEMORANDUM AND ORDER RE:
DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT</u>

----oo0oo----

Plaintiff Phillip Parker brought this action against

defendants EthosEnergy Power Plant Services, LLC ("EthosEnergy");

John Wood Group, PLC ("Wood Group"); Dave Blevins[1]; and Does 1-20

(collectively "defendants") alleging wrongful discharge in

violation of public policy and disparate treatment, retaliation,

and harassment in violation of California Government Code §

---

[1] On June 1, 2016, plaintiff stipulated to the dismissal
with prejudice of defendant Dave Blevins. (Docket No. 22.)

1

12940.  (Am. Compl. (Docket No. 13).)  In separate motions,
EthosEnergy and Wood Group now move for summary judgment pursuant
to Federal Rule of Civil Procedure 56.

I.      Factual and Procedural Background

          Wood Group is headquartered in Aberden, Scotland.  On
October 8, 2013, Wood Group entered into an agreement with
Siemens AG, a non-party to this lawsuit, to form a joint venture
known as Ethos Energy Group, Limited.  (Miller Dec. ¶ 2, Ex. A,
Pl.'s Resp. to Wood Group's Req. for Produc. Of Docs., 13.)
Ethos Energy Group in turn owns EthosEnergy, which operates
Consumnes Power Plant ("CPP") in Sacramento, California.  (Am.
Compl. ¶ 5.)  In November 2005, plaintiff was hired by Wood Group
Power Operations, Inc.,[2] to work at CPP as an Operations and
maintenance Technician ("OMT").  (Id. ¶ 16.)

          CPP is certified by California's Division of
Occupational Safety and Health ("Cal-OSHA") as a Voluntary
Protection Program ("VPP") site.  (Am. Compl. ¶ 20(a).)
Accordingly, it is the employees on site who identify possible
health and safety issues and bring them to light.  (Id.)  In
order to qualify as a VPP site, an employer must monitor its
safety measures using a "leading indicator."[3]  (Blevins' Dep. 23
(Docket No. 32-3).)  In 2004, CPP's management team implemented

_____

          [2]     Wood Group Power Plant Services, LLC, changed its name
to EthosEnery Power Plant Services, LLC in 2014.  (Docket No. 35-
2.)
          [3]     A leading indicator is a proactive measure used to
track activities aimed at preventing and controlling injury.
Leading indicators report what employees are doing on a regular
basis to prevent injuries, while "lagging indicators" track
safety accidents and statistics.

2

behavior-based, peer-to-peer safety observations as CPP's leading indicator for purposes of Voluntary Protection Program certification. (Am. Compl. ¶ 22.) During safety observations, employees observe a co-worker, provide positive re-enforcement on items performed well, and identify opportunities for improvement. (Pl.'s Dep. 47 (Docket No. 32-1).)

Performing safety observations was part of plaintiff's job description, and employee bonuses were partly dependent on employee compliance with this requirement. (Id. at 50.) Employees were required to complete two peer-to-peer observations each quarter, totaling eight a year, as well as contractor observations. (Id.) A safety committee met monthly to discuss results of the peer-to-peer observations and identify at-risk behavior that needed addressing. (Blevins' Dep. 25.) Plant employees also conducted daily pre-shift safety meetings, and management provided an anonymous suggestion box where employees could submit safety suggestions which were ten reviewed at safety committee meetings. (Pl.'s Dep. 42.)

Safety meetings were mandatory. (EthosEnergy's Mot. for Summ. J. 11 (Docket No. 30).) At these meetings, plaintiff and other employees raised potential safety hazards and presented safety options. (Pl.'s Dep. 53.) Each meeting included a period of time during which employees could voice safety concerns and discuss safety risks identified by the peer-to-peer observations. (Id.)

Beginning October 2013, plaintiff reported directly to Eddie McCormick, the Operations and Maintenance Manager, who reported to Dave Blevins, CPP's Facility Manager. (Pl.'s Dep.

36.)  On August 31st, 2014, plaintiff wrote a letter to EthosEnergy's human resources department complaining of Blevins' behavior and work place harassment.  The letter stated, in part, that plaintiff's "greatest fear is a plant manager [Dave Blevins] that has run a facility without regard to the consequences of planned preventative maintenance."  (Am. Compl. ¶ 27.)  In response to the letter, EthosEnergy sent a representative to CPP to conduct employee interviews regarding Dave Blevins' conduct toward employees.  (Id. ¶ 28.)  The investigation lasted one day. (Id.)

On March 20, 2015, plaintiff missed his scheduled shift and failed to attend a mandatory safety training.  (Miller Decl., Ex. 19.)  Plaintiff asserts that his wife called Eddie McCormick, plaintiff's manager, prior to the start of his shift to inform McCormick that plaintiff would be unable to attend.  (Mary Parker Decl. ¶ 1.)  Plaintiff received a written warning corrective action because of this.  (Blevins' Dep. 68, Ex. 11.)

By June 30, 2015, at which point plaintiff should have completed half of his annual safety observation requirements, he was significantly behind, as were several other employees. (Blevins' Dep. 79.)  Plaintiff concedes he told management he did not think the peer-to-peer observations were valuable.  (Pl's Dep. 50.)  He had previously refused to complete the required observations and, because of this, lost part of his bonus in 2014.  (Id.)  By June 2015, plaintiff had only completed one peer observation and one contractor observation.  (Blevins' Dep. 79.) Blevins emailed plaintiff, informing him that should he "choose not to make the effort to meet the expected goals by September

30th, disciplinary actions will be implemented." (Miller Decl. ¶ 2, Pl.'s Dep., Ex. 20.)

In July 2015, Blevins had another discussion with plaintiff regarding his observation requirements. (Miller Decl., ¶ 2, Pl.'s Dep., Ex. 21, referencing conversations.) In that same month, plaintiff was involved in an incident with Pete Alexander, his team lead, in which plaintiff did not comply with instructions regarding an adjustment to the hydrogen regulator.[4] (Miller Decl. ¶ 2.)

On August 7, 2015, plaintiff failed to attend another mandatory safety training and did not inform his manager that he would be absent prior to the start of his shift. (Id.) Plaintiff states that he called Blevins during the mandatory training and apologized, stating that a "miscommunication" had caused him to miss the beginning of the training. (Pl.'s Dep., Ex. 21.) By this date, plaintiff had made no progress toward his safety observation requirements since the June 30th email correspondence with Blevins. (Id.) Plaintiff was issued a second written warning corrective action and was suspended for a day without pay. (Id.; Miller Decl. ¶ 2.)

On August 10th, 2015, plaintiff submitted a work request stating that the filter press spreader did not work and that the pneumatic system was broken. (Am. Compl. ¶ 30.)[5] The

---

[4] Plaintiff states that he complied with the request but made a mistake and increased the hydrogen level too much. (Pl.'s Decl. ¶ 1.)

[5] The request read as follows: "filter press spreader for the filter plates does not work. Additionally, the entire pneumatic system is corrupt and solenoids/tubing needs to be

5

following day, plaintiff submitted another work request regarding the filter press spreader, stating that it continued to malfunction and remained nonoperational. (Id. ¶ 31.) On August 20, 2015, plaintiff was injured and filed a Safety/Quality Observation Form in which he stated that the filter press spreader closed on his leg, causing injury. (Id. ¶ 32.) He further stated that the filter press spreader was a "continuous safety hazard." (Id.) On that same day, a Maintenance Work Order was issued stating that the filter press spread and pneumatic system did not work. (Id. ¶ 33.)

On September 24th, 2015, plaintiff completed a peer-to-peer observation form in which he provided what EthosEnergy considered "unprofessional comments."[6] (Miller Decl. ¶ 2.) Plaintiff does not dispute submitting this form, but states it was intended to make "light of a situation." (Maldonado Decl., Ex. A, Pl.'s Dep 116-18.)

On October 9th, 2015, Blevins terminated plaintiff's employment with EthosEnergy. (Miller Decl. ¶ 2.) On plaintiff's discharge form, the stated reason for his termination was his failure to perform his job responsibilities. (Pl.'s Dep., Ex. 23, discharge form.) Plaintiff was 49 at the time he was discharged. (Miller Decl. ¶ 2; Pl.'s Dep. 7.) The individual who replaced plaintiff was ten to twelve years younger than

replaced." (Am Compl. ¶ 30.)

[6]     Plaintiff's comments included: ". . . No mere sissy support person is capable of doing such a fine job and Operations has once again taken the [lead] to provide the detailed care and professionalism that makes 'A' team what it is... don't stand in our way." (Pl.'s Dep., Ex. 22.)

1   plaintiff.  (Pl.'s Decl. ¶ 6.)

2          On December 28th, 2015, plaintiff filed a charge with

3   the Department of Fair Employment and Housing, alleging he had

4   been wrongfully terminated and had been harassed and retaliated

5   for his active participation in safety activities.  (Pl.'s Dep.,

6   Ex. 24; Miller Decl. ¶ 2.)  The same day, he requested and

7   received a Right to Sue Notice.[7]  (Id.)

8          On December 30th, 2015, plaintiff filed this lawsuit

9   alleging wrongful discharge in violation of public policy and

10  disparate treatment, harassment, and retaliation under the

11  California Fair Employment Housing Act ("FEHA") (Gov't Code §

12  12940) based on his age and participation in safety activities.

13  (Am. Compl.)

14         On October 31st, 2016, plaintiff filed a charge of

15  discrimination with the Equal Employment Opportunity Commission

16  ("EEOC"), alleging discrimination based on race, sex,

17  retaliation, and age.[8]  (Miller Decl. ¶ 2; Pl's Dep., Ex. 25.)

18  On December 22nd, 2016, the EEOC dismissed the charge and closed

19  the file, noting that "the facts alleged in the charge fail to

20  state a claim under any of the statutes enforced by the EEOC."

21  (Id.)

22  II.    Legal Standard

23         Summary judgment is proper "if the movant shows that

24  there is no genuine dispute as to any material fact and the

25  _____

26         [7]    Plaintiff's complaint with the Department of Fair
    Employment and Housing was closed on December 28, 2015, because
27  of the Right to Sue notice.  (Docket No. 19-2.)

28         [8]    Plaintiff is not pursuing a race or sex claim.

                              7

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[W]here the palpable facts are substantially undisputed, [the controverted] issues can become questions of law which may be properly decided by summary judgment." Braxton-Secret v. A.H. Robins Co., 769 F. 2d 528, 531 (9th Cir. 1985)).

The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot provide evidence to support an essential element upon which it will bear the burden of proof at trial. Id.

Once the moving party meets its burden, the burden shifts to the non-moving party to "designate specific facts showing that there is a genuine issue [of material fact] for trial." Id. at 324. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In deciding a summary judgment motion, the court must

view the evidence in the light most favorable to the party

opposing the motion and draw all justifiable inference in its

favor. <u>Matsushita</u>*,* 475 U.S. at 587. "Credibility

determinations, the weighing of the evidence, and the drawing of

legitimate inferences from the facts are jury functions, not

those of a judge . . . ruling on a motion for summary judgment .

. ." <u>Anderson</u>, 477 U.S. at 255.

III.   <u>EthosEnergy's Motion for Summary Judgment</u>

     A.   <u>Wrongful Discharge Claim</u>

        1.   <u>Public Policy</u>

     Plaintiff's first cause of action alleges that

defendants wrongfully fired plaintiff in violation of public

policy. (Am. Compl.) In order to withstand a legal challenge to

this claim, plaintiff must "identify a policy that is fundamental

and substantial in that it is tethered to constitutional or

statutory law, that inures to the benefit of the public rather

than to a personal or proprietary interest of the individual

employee, and that is clearly articulated at the time of

discharge." <u>Sinatra v. Chico Unified School Dist.</u>, 119 Cal. App.

4th 701, 706 (3d Dist. 2004).

     Here, plaintiff does not specifically identify the

specific public policy or statutory or constitutional law on

which he relies. Instead, he simply alleges he was discharged

because he participated in an occupational health and safety

committee, health and safety meetings, and filed a complaint

regarding unsafe equipment. (Am. Compl. ¶ 42.)[9]

---

    [9]   While plaintiff did not expressly mention a particular
public policy in his Complaint, in his Opposition to

1          2.   Prima Facie Case

2          For the following reasons, plaintiff is has not made

3    out a prima facie showing of retaliatory wrongful discharge.

4    When a plaintiff alleges "wrongful employment termination in

5    violation of public policy, and the defendant seeks summary

6    judgment, California follows the burden shifting analysis of

7    McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to

8    determine whether there are triable issues of fact for resolution

9    by a jury." Loggins v. Kaiser Permanente Int'l, 151 Cal. App.

10   4th 1102, 1009 (2007).  In the first stage, plaintiff must

11   establish a prima facie case by demonstrating that "(1) he or she

12   engaged in a 'protected activity,' (2) the employer subjected the

13   employee to an adverse employment action, and (3) a causal link

14   existed between the protected activity and the employer's

15   action."  (Id. at 1108) (citing Yanowitz v. L'Oreal USA, Inc. 36

16   Cal.4th 1028, 1042 (2005)).

17          a.   Protected Activity

18          Courts generally find claims of wrongful discharge in

19   violation of public policy claims are viable when the employee

20   was terminated for "(1) refusal to violate a statute; (2)

21   EthosEnergy's Motion for summary judgment, he cites to § 6310 of
22   the California Labor Code.  Plaintiff argues that while he may
     not have identified the code section within the Complaint, "it
23   was adequately described."  Plaintiff further argues that if
     necessary, he should be able to amend his Complaint to more
24   specifically reflect Labor Code § 6310.  In Freund v. Nycomed
     Amersham, 347 F. 3d 752, 758 (9th Cir. 2003), the court explained
25   that § 6310 "embodies a public policy against retaliatory
     firings, and that violation of § 6310 could serve as the basis
26   for a claim of wrongful termination in violation of public
27   policy."  Accordingly, the court will assume that plaintiff has
     satisfied the requirement of identifying a fundamental public
28   policy.

performing a statutory obligation; (3) exercising a statutory constitutional right or privilege; or (4) reporting an alleged violation of a statute of public significance. <u>Pettus v. Cole</u>, 49 Cal. App. 4th 402, 454 (1st Dist. 1996).

Relying on the third category, plaintiff argues that he was terminated for exercising his statutory right to make complaints regarding employee safety, which is a right granted to him by California Labor Code § 6310. Section 6310 provides that:

> "[n]o person shall discharge or in any manner discriminate against any employee because the employee has done any of the following: (1) Made any oral or written complaint to the division, other governmental agencies having statutory responsibility for or assisting the division with reference to employee safety or health, his or her employer, or his or her representative."

Not every comment made regarding workplace safety is a "complaint." Merely expressing concern for workplace safety does not qualify as a complaint. <u>Muller v. Auto. Club of So. Cal.</u>, 61 Cal. App. 4th 431 (1998) (disapproved of on other grounds by <u>Colmenares v. Braemar Country Club, Inc.</u>, 29 Cal. 4th 1019 (2003)) ("voicing of a fear about one's safety in the workplace does not necessarily constitute a complaint about unsafe working conditions under Labor Code Section 6310.")

In <u>Luchetti v. Hershey Co.</u>, 412 Fed. Appx. 978, 979 (9th Cir. 2011), the court found that the plaintiff's communications with his supervisor were not complaints as defined in § 6310 because his discussions regarding safety did not demonstrate opposition to his employer's safety measures or

allege any illegal activity.  The district court, whose decision was later upheld by the Ninth Circuit, determined that plaintiff was simply "communicating with his supervisors and co-workers about how best to address safety issues. . . a matter that plaintiff admits was within his job duties." Luchetti v. Hershey Co., Civ. No. 08-1629 SI, 2009 WL 2912524, at *5 (N.D. Cal. Sept. 9, 2009), aff'd 412 F. App'x 978 (9th Cir. 2011).

Here, plaintiff participated in a safety committee, attended safety meetings, and filed work orders regarding broken equipment that he viewed as unsafe.  (Am. Compl. ¶ 42.)  As in Luchetti, plaintiff did not explicitly object to specific safety practices or report any safety violations either internally or to any external agency.  Instead, he simply identified potential safety issues, proposed safety suggestions, and engaged in conversations about safety.

Moreover, plaintiff's activities were clearly within his job responsibilities.  Attendance was mandatory at all safety meetings, (EthosEnergy's Mot. for Summ. J. 11 (Docket No. 30), and, as a Voluntary Protection Program certified location, CPP employees were tasked with identifying possible health and safety issues and bringing these potential issues to light.  (Am. Compl. ¶ 20(a).)  Courts, including this court, have held that actions that are part of an employee's regular duties cannot be considered protected activities.  See Lund v. Leprino Foods CO., Civ. No. S-06-0431 WBS KJM, 2007 WL 1775474 (E.D. CA. June 20, 2007) (finding that by reporting a chemical spill the employee was merely doing his job, and therefore was not engaging in protected activity).  Therefore, even if plaintiff had complained

12

about specific safety practices or violations, his actions still would not be protected because they were consistent with his job responsibilities. Accordingly, the court concludes that plaintiff was not engaging in a protected activity as a matter of law.

### b. Adverse Employment Action

To satisfy the second element of a prima facie case of wrongful termination, plaintiff must demonstrate that defendant subjected him to an adverse employment action. Here, plaintiff was terminated on October 9, 2015. (Pl.'s Dep., Ex. 23, discharge form.) It is undisputed that his termination qualifies as an adverse employment action.

### c. Causal Link

In the final step of establishing a prima facie case of wrongful termination, plaintiff must show that the adverse employment action he was subjected to, in this case termination, occurred because of his participation in a protected activity. Even if plaintiff had satisfied that initial requirement of showing he was engaged in a protected activity, his claim of wrongful termination still fails. When asked why he was discharged, plaintiff admitted that it was merely "a feeling that [he] was being made an example of" because he brought up safety hazards. (Pl.'s Dep. 147.) Plaintiff argues that because he was boisterous about safety concerns, "it can be presumed that he was targeted for making his concerns known to everyone." (Pl.'s Op. to EthosEnergy's Mot. for Summ. J. 10 (Docket No. 38).) However, plaintiff provides no evidentiary support for this presumption.

Plaintiff argues that the proximity between the date he

filed work orders and the date in which he was fired creates an
inference that his safety complaints were the true reason for his
termination. However, in June 2015, months before plaintiff was
discharged or had filed the safety complaints discussed above,
plaintiff was warned that if he did not comply with safety
requirements by September 30, 2015, he would face disciplinary
action. (Miller Decl. ¶ 2, Pl.'s Dep., Ex.20.) This date was
set prior to plaintiff engaging in any of the allegedly protected
activity, thus negating plaintiff's contention that he was fired
for making complaints about safety.

Accordingly, because plaintiff has failed to show a
causal link between his safety reports and his termination, he is
unable to establish a prima facie case of wrongful termination.

### 2. Legitimate, Non-Retaliatory Reason

Once the employee has established a prima facie case of
wrongful termination, the burden shifts to the employer to
articulate a non-retaliatory reason for the adverse employment
action. <u>McDonnel Douglas</u>, 411 U.S. 792 at 802. This burden
requires only that defendant articulate, rather than prove, a
legitimate reason for the termination. <u>Univ. of S. Cal. V.
Superior Court</u>, 222 Cal. App. 3d 1028, 1039 (2d Dist. 1990).

Here, because plaintiff has been unable to demonstrate
the elements necessary to establish a prima facie case, there is
no need to continue the burden-shifting analysis. However, even
if plaintiff had been able to establish a prima facie case of
wrongful termination, defendant has met its burden of providing a
legitimate, non-retaliatory, non-discriminatory reason for
discharging plaintiff.

Defendant contends that plaintiff was discharged because he failed to meet his job requirements and refused to comply with company policy or follow directions.  (EthosEnergy Mot. for Summ. J.)  Specifically, defendant argues that plaintiff did not attend mandatory safety meetings and failed to comply with safety observation requirements.  When plaintiff was asked whether he refused to complete the necessary safety observations, he admitted that he had refused.  (Pl.'s Dep. 51.)  Further, on June 30, 2015, before plaintiff was injured or submitted any of the work orders at issue in this case, he was warned that if he did not "make effort to meet the expected [safety observation] goals by September 30th, disciplinary actions will be implemented."  (Miller Decl. ¶ 2, Pl.'s Dep., Ex.20.)  Plaintiff does not deny that he received this warning, and admits he was issued other warnings regarding his unsatisfactory performance as well.  (Pl.'s Dep. 115; Blevins' Dep., Ex. 19.)

These are legitimate reasons to discharge an employee, and as such defendant has clearly offered "reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action."  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993).

3.    Pretext

If, as here, the employer is able to produce evidence of a legitimate reason for the action, under the McDonnell Douglas standard "the presumption of retaliation 'drops out of the picture' and the burden shifts back to the employee to provide substantial responsive evidence that the employer's

proffered reasons were untrue or pretextual." <u>Loggins</u>, 151 Cal.

App. 4th at 1109 (citations omitted). "[T]he plaintiff may

establish pretext either directly by persuading the court that a

discriminatory reason more likely motivated the employer or

indirectly by showing that the employer's proffered explanation

is unworthy of credence." <u>Morgan v. Regents of Univ. of Cal.</u>, 88

Cal. App. 4th 52, 67 (2000) (citations omitted). "The employee

seeking to avoid summary judgment cannot simply rest on the prima

facie showing, but must adduce substantial additional evidence

from which a trier of fact could infer the articulated reasons

for the adverse employment action were untrue or pretextual" in

order to avoid summary judgment. <u>Loggins</u>, 151 Cal. App. 4th at

1112-13.

Here, plaintiff has offered no evidence of pretext. As

discussed above, plaintiff does not deny that he received

multiple corrective actions prior to his discharge, or that he

refused to comply with safety observations. Rather, he argues

that he should not have received these actions and that the

safety observations should not have been required.[10] However,

those are simply arguments about the merits of his termination,

not about whether his termination was based on any discriminatory

or retaliatory motive. Nothing about plaintiff's argument

---

[10]    On March 20, 2015, plaintiff received a corrective
action for failing to attend a training session and his scheduled
shift. He argues that he should not have received this because
his wife attempted to contact plaintiff's boss, Eddie McCormick,
to inform him that plaintiff would be unable to attend. On August
7, 2015, plaintiff received another corrective action for missing
training. He again argues that he should not have received this,
claiming that at the time he was unaware he had a training
scheduled. (Pl.'s Opp'n to EthosEnergy's Mot for Summ. J.)

16

suggests that EthosEnergy's reason for terminating plaintiff was not credible. The court will not second guess defendant's personnel decisions, which is what plaintiff is asking the court to do in this instance. See Sharpe v. Am. Tel. & Tel. CO., 66 F. 3d 1045, 1050 (9th Cir. 1995) (explaining that "discrimination laws are not intended as a vehicle for general judicial review of business decisions.")

Plaintiff also contends that he has "a feeling that he was being made an example of" because he brought up safety hazards. (Pl.'s Dep. 147.) Again, plaintiff is able to provide no evidence to validate this intuition. Accordingly, because plaintiff has not provided evidence suggesting that the reasons articulated by EthosEnergy were in anyway untrue, plaintiff's claim of wrongful termination fails.

### B.   Fair Employment and Housing Act Claims

Plaintiff alleges that EthosEnergy discriminated against him in violation of the California Fair Employment and Housing Act ("FEHA") by engaging in (1) disparate treatment in violation of Government Code § 12940(a); (2) retaliation in violation of Government Code § 12940(h); and harassment in violation of Government Code § 12940 et seq.

### 1.   Disparate Treatment

Plaintiff argues EthosEnergy violated § 12940(a) by discharging him because of his "age and active participation in occupation health and safety committees and/or his active participation in health and safety meetings and/or the complaint he filed with [defendants] with respect to unsafe equipment." (Am. Compl. ¶ 47.)

Section 12940(a) only protects against discrimination based on "race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status of any person."  Cal. Gov't Code § 12940.  Plaintiff does not dispute that FEHA does not apply to safety issues.  Accordingly, any alleged discrimination based on plaintiff's participation in safety meetings or making safety complaints is not covered by FEHA.

Plaintiff's claim of disparate treatment based on age fails as well.  The three-stage burden-shifting test outlined above applies to claim of age discrimination as well.  <u>Guz v. Bechtel Nat'l Inc.</u>, 24 Cal. 4th 317, 354 (2000).  Accordingly, to succeed on a claim of age discrimination under FEHA, plaintiff must first establish a prima facie case.  <u>Wallis v. J.R. Simplot Co.</u>, 26 F. 3d 885, 889 (9th Cir. 1994).

a.  <u>Prima Facie Case</u>

To establish his prima facie case, plaintiff must show "(1) at the time of the adverse action he was forty years of age or older; (2) he was satisfactorily performing his job; (3) an adverse employment action was taken against him; and (4) some other circumstance suggesting a discriminatory motive was present."  <u>Guz</u>, 24 Cal. 4th at 455.

Here, plaintiff was forty-nine when he was terminated, thus satisfying the first element of the prima facie case.  Plaintiff's termination is an adverse employment action taken against him, thus satisfying the third element of the test.

However, the court finds that plaintiff cannot meet the second or fourth elements of his prima facie case.

The undisputed facts before the court indicate that plaintiff was not satisfactorily performing his job. He had received multiple warnings regarding his unsatisfactory performance and had been warned that disciplinary action would occur if he did not modify his performance. (Pl.'s Dep. 115.) Accordingly, plaintiff cannot demonstrate that he was performing competently at the time of his termination.

Additionally, plaintiff has not identified any evidence suggesting a discriminatory motive. When asked during his deposition for evidence indicating that his age was a factor in the decision to discharge him, plaintiff responded that he was unable to "quantify it." (Pl.'s Dep. 148-49.) Plaintiff does argue that he was replaced by a younger employee, without specifically identifying that individual or his/her exact age, but that alone is insufficient to prove age discrimination. See Phipps v. Gary Drilling Co., 722 F. Supp. 615, 622 (E.D. Cal. 1989). Accordingly, plaintiff is unable to establish a prima facie case of age discrimination.

                    b.    Legitimate, Non-Discriminatory Reason

Assuming, arguendo, that the court did find plaintiff had established a prima facie case, the burden would shift to defendant to articulate some legitimate, non-discriminatory reason for the employee's termination. McDonnell Douglas, 411 U.S. 792 at 802. As explained above, the defendant states plaintiff was fired because he was not adequately performing his job. This is a legitimate reason for terminating plaintiff's

employment, and as such defendant has met his burden.

     c. <u>Pretext</u>

   Once defendant articulates a legitimate, non-discriminatory reason, the plaintiff must then "demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory." <u>Id.</u> Here, plaintiff is unable to refute EthosEnergy's legitimate, non-discriminatory reason for terminating him or establish that it was a pretext for age discrimination.  In fact, he admits the conduct for which he was discharged, and simply disagrees with the merits of EthosEnergy's decision.  Additionally, as explained above, plaintiff has no evidence to suggest his age was a motivating factor for his termination.  Accordingly, plaintiff's claim of disparate treatment fails.

    2. <u>Retaliation</u>

   Plaintiff also alleges defendant violated FEHA § 12940(h) by retaliating against plaintiff for his participation in a number of allegedly protected activities including "(1) participating in [the] occupational health and safety committee and/or (20 plaintiff's active participation in health and safety meetings and/or (3) filing a complaint with [defendants] with respect to unsafe equipment." (Am. Compl. ¶ 50.)  However, as described above, FEHA does not apply to safety-related activities, and thus plaintiff has not identified retaliation based on any protected FEHA category.  Accordingly, plaintiff's retaliation claim fails as a matter of law.

    3. <u>Harassment Claim</u>

   Plaintiff claims he was harassed by defendants based

upon his age, participation in safety meetings and the safety committee, and a complaint he filed about malfunctioning equipment. (Am. Compl. ¶ 56.) However, as already described, because FEHA does not provide protection for participating in safety meetings or for opposing safety practices, plaintiff's claim of harassment on these grounds fails.

Moreover, to succeed on his age-related harassment claim, plaintiff must demonstrate: (1) that he was subjected to verbal or physical conduct of an age-related nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. <u>Vasquez v. Cty. of Los Angeles</u>, 349 F. 3d 634, 642 (9th Cir. 2003), <u>as amended</u> (Jan. 2, 2004).[11]

Here, there is no evidence that plaintiff was subjected to any conduct of an "age-related" nature. Plaintiff makes no reference to any comments, statements, or slurs that referenced his age, nor does he suggest that his younger co-workers were treated any differently than he was. When asked what kind of harassment plaintiff felt he had endured, plaintiff explained that Blevins had been combative and unapproachable. (Pl.'s Dep 163.) When questioned further as to why plaintiff thought the alleged harassment was related to his age, plaintiff testified that Blevins "harassed[ed] those that did not follow his perceptions." (Pl.'s Dep. 160.) Neither of these statements

---

[11] The <u>Vasquez</u> court applied this standard to a Title VII case, but California courts apply the same standard in FEHA cases. <u>See</u> <u>Lyle v. Warner Bros. Television Prods.</u>, 38 Cal. 4th 263, 279 (2006); <u>Reno v. Baird</u>, 18 Cal. 4th 640, 646-47 (1998).

indicates any sort of age discrimination. Even when questioned directly on the topic, plaintiff was unable to articulate how the purported harassment was in any way related to his age. Accordingly, plaintiff's claim regarding age harassment fails.

IV. <u>John Wood Group PLC's Motion for Summary Judgment</u>

For the reasons discussed above, none of plaintiff's claims against EthosEnergy survive EthosEnergy's Motion for summary judgment. Accordingly, because there is no liability for the subsidiary company, Wood Group, as the parent company, cannot be liable. Moreover, even if EthosEnergy had been found liable, EthosEnergy and Wood Group are separate entities and plaintiff has not identified the requisite evidence to prove otherwise.

Being a parent company, alone, is insufficient to establish liability upon Wood Group. <u>Pac Landmark Hotel, Ltd. V. Marriot Hotels, Inc.</u>, 19 Cal. App. 4th 615, 628 (1993), <u>as modified on denial of reh'g</u> (Nov. 5, 1993). It is presumed that corporate entities "have separate existences. . . [and] in particular, there is a strong presumption that a parent company is not the employer of its subsidiary's employees." <u>Laird v. Capital Cities/ABC, Inc.</u>, 68 Cal App. 4th 727, 737-38 (3d Dist. 1998). Plaintiff can overcome this presumption if he can demonstrate any of the following: (1) the entities were a single employer under the "integrated enterprise" test; (2) EthosEnergy was an agent of Wood Group; (3) the entities can be considered "joint employers," or (4) EthosEnergy was Wood Group's alter ego. See <u>id.</u>

Plaintiff relies upon only the "integrated enterprise" test to argue that his employment was controlled by Wood Group.

Under this test, to determine whether entities are liable as a single employer or an integrated enterprise, the court analyzes the following factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control. Id. at 737. All four of these factors are to be considered together, but centralized control of labor, meaning the day-to-day supervision of employees, is often considered the most relevant of the factors. Id. at 738.

Here, plaintiff has submitted no evidence to suggest that Wood Group exercised any daily control over him. Plaintiff relies upon his offer of employment and initial job description to support his claim that Wood Group exercised day-to-day control over his employment. Both of these documents state that plaintiff's employer is the Wood Group Power Operations, Inc. (Docket No. 35.) However, this company, whose name was later changed to EthosEnergy, is not the same thing as defendant John Wood Group PLC. Despite the similarities in name, the two are separate entities. (Docket No. 33, Ex. B ¶¶4, 5.) Thus, these documents fail to provide any support for plaintiff's claim that he was employed by Wood Group.

Plaintiff also points to his final performance review, which states that he adhered "to WG standards." (Maldonado Decl., Ex. A.) However, even assuming that this "WG" refers to defendant Wood Group, and not Wood Group Power Operations, Inc., it is still insufficient to establish that Wood Group maintained control over plaintiff's daily operations. "A parent's broad general policy statements regarding employment matters are not

enough to satisfy [the control] prong." <u>Laird</u>, 68 Cal. App. 4th at 738.  Thus, even if Wood Group's policies served as a guiding principle with regards to the employment standards implemented by EthosEnergy, this does not prove that Wood Group had control of the day-to-day employment decisions of EthosEnergy.

Additionally, plaintiff fails to provide any evidence indicating that the operations of EthosEnergy and Wood Group were interrelated--that is, that Wood Group "exercised greater control over [EthosEnergy's] operations than that which a parent corporation would normally exercise over its subsidiary." <u>Id.</u> In his deposition, plaintiff was unable to answer affirmatively that he had been employed by Wood Group or that anyone from Wood Group had ever directly supervised him.  (Pl.'s Dep. 41.) Plaintiff merely proved that Wood Group is a parent company of EthosEnergy, and, without more, he is unable to establish liability upon Wood Group.  Accordingly, plaintiff cannot maintain an action against Wood Group, and the court will grant summary judgment on this basis.

IT IS THEREFORE ORDERED that defendants' Motions for summary judgment be, and the same hereby are, GRANTED.

Dated:  October 3, 2017

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE